FREDERICK C. RENZIEHAUSEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

HENRY SCHUETZ, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10658, 7458. Promulgated September 17, 1927.

1. Deduction for obsolescence of intangibles denied upon authority of *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626, and *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952.

2. Petitioner discontinued the manufacture-of intoxicating liquors in 1917 under the restrictions of war-time prohibition. In 1919 it resumed distilling operations for the manufacture of medicinal whiskey and continued to distill whiskey for medicinal purposes until forced to discontinue on November 23, 1921, by the enactment of the Willis-Campbell Act. In 1922, the last year on appeal, petitioner was still disposing of its stock in trade, under the same trade-marks, trade-name, and trade-brands as it used prior to prohibition, but under different methods and to a different clientele. *Held*, that petitioner's intangibles were not destroyed on January 16, 1919, when ratification of the Eighteenth Amendment was completed; and that it suffered no deductible loss in any of the years on appeal, by virtue of destruction of intangibles by prohibition legislation.

3. Upon the evidence, *held* that petitioner is not entitled to deductions for 1918, 1919, and 1920 for obsolescence of tangible properties.

4. Petitioner's entire distilling plant, other than its bonded warehouses, was rendered obsolete by the passage of the Willis-Campbell Act on November 23, 1921, and the continued refusal of the Commissioner of Internal Revenue to issue permits for the manufacture of medicinal whiskey under the provisions of that Act; and petitioner is entitled to a deduction for 1921 for obsoleteness of its plant facilities, the amount of which is herein determined.

5. Upon the evidence, *held* that certain whiskey sold by petitioner in 1922 was property of a kind which would properly have been included in his inventory, had it been on hand at the close of that year, and that the profit from the sale of such whiskey is taxable as ordinary income under section 201 of the Revenue Act of 1921, and not as a capital gain under section 206.

*W. A. Seifert, Esq.*, for the petitioners.
*John D. Foley, Esq.*, for the respondent.

These proceedings were consolidated for hearing and decision. In the case of Frederick C. Renziehausen, respondent has determined deficiencies of $186,327.72 for 1918, $31,343.78 for 1919, $189,887.32 for 1920, $83,028.63 for 1921, and $69,752.49 for 1922. In the case of Henry Schuetz, Jr., respondent has determined deficiencies of $13,652.11 for 1918, $277.20 for 1920, and $637.98 for 1921, and an overassessment of $670.67 for 1919.

In the case of Frederick C. Renziehausen the issues are: (1) Respondent's refusal to allow deductions from income of the years 1918, 1919, and 1920 for obsolescence of good will, trade-marks, trade-names, and trade-brands of the Large Distilling Co., having an alleged value of $1,000,000 at March 1, 1913; (2) respondent's refusal to allow a loss deduction for 1919 for obsoleteness of the good will, trade-marks, trade-names, and trade-brands of the Large Distilling Co.; (3) respondent's refusal to allow deductions from income of 1918, 1919, 1920, and 1921, for obsolescence of the tangible properties of the Large Distilling Co., having a book value and alleged depreciated value of $276,652.79 at January 1, 1918; (4) respondent's refusal to allow a loss deduction for 1921 for obsoleteness of the tangible properties of the Large Distilling Co.; (5) respondent's refusal to allow deductions from income of the years 1918, 1919, 1920, and 1921, for obsolescence of the tangible and intangible properties of the Large Distilling Co.; (6) respondent's refusal to allow deductions for obsolescence of good will in computing the income of the partnership of Schuetz, Renziehausen & Co. for the years 1918, 1919, and 1920; (7) failure of respondent to allow any deductions for depreciation of the physical assets of the Large Distilling Co., in computing income for 1918, 1919, 1920, and 1921; (8) respondent erred in including in income of 1920 an alleged profit of $31,015.50 from the sale of certain whiskey; and (9) respondent's refusal to tax as a capital gain, under section 206 of the Revenue Act of 1921, the profit from the sale of certain whiskey, in 1922.

In the case of Henry Schuetz, Jr., there are but two issues: (1) respondent's refusal to allow deductions for obsolescence of good will in computing the income of the partnership of Schuetz, Renziehausen & Co. for 1918, 1919, and 1920; and (2) respondent erred in determining that petitioner realized a profit of $260.25 from the sale of certain real property in 1920.

FINDINGS OF FACT.

Frederick C. Renziehausen is a resident of Pittsburgh, Pa., and sole owner of the whiskey-distilling business conducted under the

trade name of the Large Distilling Co. He was also the owner of a one-half interest in the partnership of Schuetz, Renziehausen & Co., wholesale liquor dealers, in Pittsburgh.

Henry Schuetz, Jr., is a resident of Pittsburgh, Pa., and, during the years on appeal, owned a one-half interest in the partnership of Schuetz, Renziehausen & Co.

In 1796 Jonathan Large founded a whiskey-distilling business, under the trade name of the Large Distilling Co., at Mount Washington (now a part of Pittsburgh), Pa. Three years later the distillery was moved to Jefferson Township, Allegheny County, Pennsylvania, where the business has been carried on since that time. From 1884 to 1897 the business was conducted as a partnership, composed of Henry Large and his wife, and the petitioner, Renziehausen. In 1897 Renziehausen became sole owner of the business, and thereafter to the present time conducted it as a sole proprietorship.

The business of the Large Distilling Co. was principally that of distilling whiskey which it sold to wholesale liquor dealers under uniform contracts. It also carried on a warehousing business, storing the whiskey which it distilled in its bonded warehouses until matured and withdrawn by the owners, for which the latter paid the monthly storage charges stipulated in the sales contracts. It also bottled and cased the matured whiskey in bond, for which it received compensation from the owners thereof. From time to time, with varied frequence, it purchased warehouse receipts for whiskey in its own bonded warehouses and resold the same at a profit. It carried the whiskey left over from each distilling season to various stages of maturity, and, as opportunities were afforded, disposed of it to the trade.

During September and October of each year a close watch was kept on growing grain crops and the trend of the Chicago and Milwaukee grain markets, to observe the prevailing prices for grain. Based upon these observations, the price for the whiskey to be distilled in the following winter and spring was fixed, and contracts were then solicited from the wholesale trade based upon that price. The contracts were printed and uniform, and for the distilling season of 1916–1917 read, in terms and figures, as follows:

ESTABLISHED 1796<br>
The Large Distilling Company<br>
P. O. Box 1050, Pittsburgh, Pa.<br>
Distillers of Large Rye Whiskey<br>
LARGE, PENN'A ———— 191—

To————————————————————

    We propose to distill for your account (————) ———————— barrels LARGE RYE WHISKEY, to be delivered in our U. S. Bonded Warehouse, on our distil-

lery premises, located at Large, on Peters Creek, Allegheny County, Pennsylvania, (contingent upon strikes and unavoidable accidents) as follows:

---

— Bbls. in November, 1916 — Bbls. in January, 1917 — Bbls. in April, 1917.
— Bbls. " December, 1916 — Bbls. " February, 1917 — Bbls. in May, 1917.
                          — Bbls. " March, 1917     — Bbls. " June, 1917.

---

*At 65 cents* per proof gallon, *Net Cash,* original gauge, in bond.   Rate of storage. five (5) cents per bbl. per month.

Respectfully submitted.

THE LARGE DISTILLING COMPANY

Per ————————————————.

Accepted ———— 191—

The whiskey required to fill the contracts was distilled in the following fall and spring; placed in Government bonded warehouses, and the warehouse certificates therefor turned over to the owners of the whiskey according to the quantities purchased.   After the whiskey had remained in the warehouses for the time required by Government regulations, usually four years, it was bottled in bond, under Government supervision, by the Large Distilling Co. for the owners of the whiskey.

"Large" whiskey, by which name the product of the Large Distilling Company was generally known, was distributed by wholesale and retail liquor dealers throughout the whole of the United States. It was generally regarded by the wholesale trade as one of the leading rye whiskeys of the country.   For a long period prior to 1913 and thereafter until the Large Distilling Co. ceased distilling for beverage purposes in 1917, there was a steady growth in the demand for "Large" whiskey.   The company seldom operated its distillery to full capacity.   It was the practice to determine upon the quantity of whiskey to be distilled in the following season before soliciting contracts from the wholesale trade, and contracts were accepted with due regard to the total quantity to be distilled.   Usually the quantity specified in the contract of a particular wholesale dealer was based upon the quantity upon which that dealer was making tax payments. The purpose of this was to prevent, as far as practicable, speculation in warehouse receipts for "Large" whiskey.   Because of these business practices, the demand for "Large" whiskey, as a general rule, exceeded the supply.

From 1899 to 1913, inclusive, the Large Distilling Co. expended for advertising the total sum of $82,500.02; and from 1914 to 1921, inclusive, it expended for the same purpose the total sum of $86,155.61. The advertising consisted of installing exhibits at local and international expositions, well designed show cards, and displays in leading

trade journals, newspapers, theatre programs, whiskey blotters, and the distribution of price lists. It exhibited its product at ten international expositions, viz: Chicago, 1893; Paris, 1900; St. Louis, 1904; Liege, 1905; Milan, 1906; Jamestown, 1907; Brussels, 1910; Ghent, 1913; London, 1914; and San Francisco, 1915; at nine of which it was awarded the grand prizes.

In addition to the amounts expended specifically for advertising, the Large Distilling Co., between 1899 and 1913, inclusive, paid to its customers the total sum of $55,781.10 for leakage; and from 1914 to 1921, inclusive, it expended for the same purpose the following amounts:

| | | | |
|---|---|---|---|
| 1914 | $2,048.20 | 1919 | $368.28 |
| 1915 | 2,228.97 | 1920 | 1,753.74 |
| 1916 | 3,187.33 | 1921 | 1,467.78 |
| 1917 | 1,297.23 | | |
| 1918 | 948.61 | Total | 13,300.14 |

Leakage refers to the evaporation while the whiskey is stored in the Government bonded warehouses in excess of the Government allowance, and upon which the owners of the whiskey were required to pay the tax. The tax on excess evaporation was paid by the owners and they were reimbursed by the Large Distilling Co., although there was no specific provision in the contracts under which the company could be held liable.

On July 19, 1897, the Large Distilling Co. purchased a trade-mark for $5,000 cash.

At March 1, 1913, the Large Distilling Co. owned trade-marks, trade-names and trade-brands as follows: Five-pointed star within a star; the label "Large Whiskey"; the slogan "Drink a Little Large"; and the company also had registered the label "Large, Established 1796, Monongahela Pure Rye Whiskey"; and "Pure Monongahela Rye Whiskey Made by Henry Large, Jr., Pittsburgh, Pennsylvania" within a circle.

For the years 1908 to 1912, inclusive, the books of account of the Large Distilling Co. show tangible property employed in the business and earnings, as follows:

| Year | Tangible property | Earnings |
|---|---|---|
| 1908 | $141,412.94 | $88,815.70 |
| 1909 | 231,824.43 | 89,513.82 |
| 1910 | 240,337.01 | 79,705.39 |
| 1911 | 292,226.98 | 85,003.03 |
| 1912 | 351,099.53 | 112,517.94 |
| Total | 1,256,900.92 | 455,555.88 |
| Average | 251,380.18 | 91,111.18 |

11340°—28——9

From the time he became a partner in the Large Distilling Co. in 1884 to and including 1912 the petitioner Renziehausen was not paid any salary for his personal services. A reasonable compensation for the period 1908 to 1912, inclusive, for the services he rendered to the business would have been $15,000 per annum.

In December, 1907, shortly after distilling operations for the season of 1907–1908 had commenced, the Large Distilling Co.'s distillery was destroyed by fire. The distillery was rebuilt shortly thereafter, but no more whiskey was distilled until the following distilling season. Had not the fire occurred the company, during the succeeding four or five years, would have received income from the storing and bottling of the whiskey which would have been distilled in the season of 1907–1908.

During the past 22 years the petitioner Renziehausen has carried on the business of the Large Distilling Co., entirely with his own funds; no borrowed money has been employed in the business during that time.

The business of the Large Distilling Co., or any interest or any share therein, has never been offered for sale during the time ownership has vested in the petitioner Renziehausen.

The last whiskey produced by the Large Distilling Co. for beverage purposes, was distilled in May, 1917. Thereafter and until January 16, 1920, the effective date of the Eighteenth Amendment, no whiskey could be produced for beverage purposes because of war-time prohibition. With the imposition of war-time prohibition and the progress which had been made toward adoption of the Eighteenth Amendment, Renziehausen became convinced in 1918 that the distilling part of the business of the Large Distilling Co. was through for all time, and that the business as a whole would be entirely wound up and liquidated within four years. During 1919 Renziehausen became aware that he could lawfully manufacture whiskey for medicinal purposes; and in the fall of that year the Large Distilling Co. resumed distilling operations for the production of whiskey for medicinal purposes and continued such operations until at or about November 23, 1921, when, because of the enactment of the so-called Willis-Campbell Act which provided that whiskey could be manufactured for medicinal purposes only under permits issued by the Commissioner of Internal Revenue, and petitioner having failed to secure such a permit, distilling operations ceased. No whiskey has been manufactured by the Large Distilling Co. since November 23, 1921. No permits for the production of medicinal whiskey have been issued, under the provisions of the Willis-Campbell Act, by the Commissioner of Internal Revenue.

The Large Distilling Co. manufactured whiskey for medicinal purposes in 1919, 1920, and 1921 in the following quantities:

|  | Barrels. |
|---|---|
| 1919 | 396 |
| 1920 | 5, 858 |
| 1921 | 10, 400 |
| Total | 16, 654 |

The cost of the physical properties of the Large Distilling Co., exclusive of land, at January 1, 1918, the accrued depreciation at the same date, and the depreciation sustained in 1918, 1919, 1920, and 1921, are as follows:

| Item | Cost to Jan. 1, 1918 | Accrued deprecia- tion Jan. 1, 1918 | Depreciation sustained | | | |
|---|---|---|---|---|---|---|
|  |  |  | 1918 | 1919 | 1920 | 1921 |
| Railroad siding | $2, 498. 63 | $1, 207. 64 | $249. 86 | $249. 86 | $249. 86 | $229. 04 |
| Buildings (new) | 151, 413. 53 | 14, 636. 63 | 3, 028. 27 | 3, 028. 27 | 3, 028. 27 | 2, 765. 91 |
| Bonded warehouses | 115, 413. 53 | 10, 989. 97 | 2, 308. 27 | 2, 308. 27 | 2, 308. 27 | 2, 308. 27 |
| Machinery and equipment | 97, 035. 72 | 48, 517. 84 | 9, 703. 57 | 9, 703. 57 | 9, 703. 57 | 8, 894. 94 |
| Unused equipment (new) | 2, 657. 13 | 1, 284. 24 | 265. 71 | 265. 71 | 265. 71 | 243. 57 |
| Buildings (old) | 5, 833. 85 | 1, 399. 83 | 291. 69 | 291. 69 | 291. 69 | 267. 38 |
| Delivery equipment | 152. 77 | 176. 65 | 6. 12 | | | |
| Unused equipment (old) | 1, 329. 75 | 1, 285. 42 | 44. 33 | | | |
| Boiler house and stack | 16, 316. 33 | 155. 66 | 326. 33 | 326. 33 | 326. 33 | 299. 15 |
| Total | 329, 681. 24 | 79, 653. 88 | 16, 224. 15 | 16, 173. 70 | 16, 173. 70 | 15, 008. 26 |

Of the physical properties above listed, none, other than the bonded warehouses, have been put to any use since cessation of distilling operations on or about November 23, 1921. None of them are adaptable to any other purpose than the processes of manufacturing whiskey. The salvage value of the physical properties, not including that of the bonded warehouses, is $19,375.

The four bonded warehouses are of the rack type of construction for the storage of whiskey in barrels, and they are not adaptable to any other purpose. Their total capacity is 55,000 barrels. Their salvage value, because of the type of construction, location, and cost of demolition, is nil. All four of the warehouses were being used for the storage of whiskey during the years on appeal and as late as 1923, and the extent to which they were being used is indicated by the following:

| Year | Number of barrels in storage Jan. 1 | Number of barrels stored dur- ing year | Number of barrels withdrawn during year |
|---|---|---|---|
| 1918 | 35, 365 | None. | 11, 183 |
| 1919 | 24, 182 | 396 | · 6, 478 |
| 1920 | 18, 100 | 5, 858 | 5, 234 |
| 1921 | 18, 724 | 10, 400 | 1, 731 |
| 1922 | 27, 393 | None. | 1, 761 |
| 1923 | 25, 632 | | |

Prior to January 1, 1918, the Large Distilling Co. disposed of the whiskey it manufactured, in bulk, exclusively to the wholesale liquor trade. Such sales of whiskey manufactured after that date as have been made have been to persons holding Government permits to purchase whiskey for medicinal purposes, and have consisted entirely of bottled-in-bond whiskey.

The business of the Large Distilling Co. has been in process of liquidation since the fall of 1921.

In his deficiency determination respondent refused to allow a deduction for any of the years on appeal for obsolescence or for obsoleteness of the tangible or intangible properties of the Large Distilling Co.

The firm of Schuetz, Renziehausen & Co. was founded in 1879 by the petitioners Renziehausen and Schuetz and Frederick Guedemann. Guedemann died in 1892 and the business was carried on thereafter, until liquidated in 1925, by the petitioners, Renziehausen and Schuetz, as equal partners. The business of the partnership was that of wholesale liquor dealers, selling brandies, cordials, fine liquors, and wines. At March 1, 1913, and thereafter until January 16, 1920, the effective date of the Eighteenth Amendment, the firm enjoyed the patronage of the most substantial retailers in the territory in which it did business.

At March 1, 1913, Schuetz, Renziehausen & Co. owned registered trade-marks for " Fort Pitt Whiskey," " Diamond Monogram Whiskey," and " Crusader Dry Gin." For the years 1908 to 1912, inclusive, the books of account show tangible property employed in the business and earnings, as follows:

| Year | Tangible property | Earnings |
|---|---|---|
| 1908 | $277,398.99 | $27,755.00 |
| 1909 | 293,376.47 | 31,442.81 |
| 1910 | 310,365.54 | 34,889.38 |
| 1911 | 329,537.80 | 22,421.78 |
| 1912 | 337,738.49 | 22,387.75 |
| Total | 1,548,417.29 | 138,896.72 |
| Average | 309,683.46 | 27,779.34 |

Liquidation of the business of Schuetz, Renziehausen & Co. was begun in 1920 and completed in 1925. When prohibition legislation became effective its stock of merchandise consisted of brandies, cordials, gins, other fine liquors, and wines. The wholesale and retail drug trade would not buy this class of merchandise. A permit was obtained from the Commissioner of Internal Revenue to donate the stock to hospitals in accordance with their authorized quota, but this method of liquidation took too long and in 1925 all of the remaining

stock was dumped in the sewers of the building, under Government supervision.

In his deficiency determinations in the cases of both petitioners, respondent refused to allow deductions from the income of the partnership of Schuetz, Renziehausen & Co. for the years 1918, 1919, and 1920 for obsolescence of intangibles.

In his deficiency determination in the case of the petitioner Renziehausen, respondent failed to allow any deduction for any of the years on appeal for depreciation of the physical properties of the Large Distilling Co. Reasonable allowances for such depreciation, exclusive of any allowance for obsolescence, are as follows:

| | | | |
|---|---|---|---|
| 1918 | $16,224.15 | 1920 | $16,173.70 |
| 1919 | 16,173.70 | 1921 | 15,008.26 |

The net income shown in the deficiency notice for 1920 is overstated by $31,015.50 by virtue of respondent erroneously including an alleged profit of that amount upon an alleged sale of whiskey in that year; and the net income shown in the deficiency notice for 1921 and 1922 is understated by $1,637.14 and $5,248.44, respectively, by virtue of respondent's failure to include certain profits earned in these years.

In 1908 there was opened on the books of the Large Distilling Co. an account captioned " Old Whiskey." At the close of each distilling season the whiskey manufactured and not sold was charged to this account and carried to maturity when it was sold to the trade through the organization of the Large Distilling Co. In 1922 all of the whiskey then carried in this account was sold and at the date of the sale it had been held for profit for more than two years. Renziehausen regarded the whiskey carried in this account as a personal investment. Over a long period of time the petitioner Renziehausen had carried personal investments on the books of the Large Distilling Co. Respondent in the deficiency determination refused to tax the profit from the sale of this whiskey as a capital gain at the rate of 12½ per cent under the provisions of section 206 of the Revenue Act of 1921.

OPINION.

ARUNDELL: In the case of Henry Schuetz, Jr., respondent determined an overassessment for 1919; hence, the Board is without jurisdiction of the issue raised for that year. *Appeal of R. P. Hazzard Co.*, 4 B. T. A. 150; and *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255.

The first issue in Renziehausen's appeal is that respondent erred in refusing to allow deductions from the income of 1918, 1919, and 1920 for obsolescence of intangibles of the Large Distilling Co., of which he was sole proprietor, resulting from prohibition legislation

based upon an alleged March 1, 1913, value for such intangibles of $1,000,000. The issue has already been decided adversely to the petitioner by the Circuit Court of Appeals, Eighth Circuit, in *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626, and by this Board in *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952; and on this issue we must find for respondent.

The second issue, which is alternative to the first, is that respondent erred in refusing to allow a deduction for 1919 for obsoleteness of the intangibles of the Large Distilling Co., resulting from prohibition legislation, based upon an alleged cost of $578,281.12. Petitioner contends that if the Board holds against him on the first issue then it must find that the intangibles of the Large Distilling Co. were wholly destroyed on January 16, 1919, when ratification of the Eighteenth Amendment was completed by the required number of States, and that he is entitled to a loss deduction for that year measured by the cost of the intangibles, which cost he computes as follows:

| | |
|---|---:|
| For services rendered by petitioner without compensation 1884 to 1913 (29 years at $15,000 per annum) | $435,000.00 |
| Advertising, 1899 to 1913 | 82,500.02 |
| Leakage, 1899 to 1913 | 55,781.10 |
| Trade-mark acquired for cash, July 19, 1897 | 5,000.00 |
| Total cost of intangibles | 578,281.12 |

The facts preclude such finding. The mere ratification of the Eighteenth Amendment did not destroy the business of the Large Distilling Co. or render its intangibles obsolete, for it continued to carry on the business after January 16, 1919, and after the Eighteenth Amendment and enforcement legislation became effective in 1920, under the same trade-marks, trade-name, and trade-brand, although modified somewhat as to methods by reason of such legislation. Prior to 1919 the Large Distilling Co. sold its product before it was manufactured to the wholesale liquor trade and made delivery in bulk in an unmatured state at its bonded warehouses. Beginning with 1919 its whiskey was matured in bonded warehouses, bottled in bond, and disposed of to the wholesale and retail drug trade or others holding Government permits. As late as 1922, the last year we have for review, the Large Distilling Co. was still disposing of its whiskey stock under the same trade-marks, trade-name, and trade-brands, and there is no record evidence as to when, if at all, the business was finally terminated. Prohibition wrought changes in the method of doing business and in the character of its clientele, but the business which it carried on both before and after prohibition became effective, and throughout all of the years under review, was essentially the same. We see no proper grounds upon which to base a deduction for 1919 or any other year on appeal for obsoleteness of intangibles of the Large Distilling Co.

The third issue in Renziehausen's appeal is that respondent erred in refusing to allow deductions from the income of 1918, 1919, 1920, and 1921 for obsolescence of the tangible property of the Large Distilling Co. Petitioner contends that with the imposition of war-time prohibition and the progress made in 1918 toward final adoption of the Eighteenth Amendment it became apparent in that year that the business of the Large Distilling Co. would have to be wound up within four years, and that the depreciated value of the tangible assets at January 1, 1918, less salvage value, should be obsolesced over the period February 1, 1918, to November 30, 1921. The petitioner Renziehausen testified at the hearing that because of the progress of national prohibition in 1918 he became convinced in that year that " the jig was up "; that the distilling part of the business was through for all time and the business as a whole would have to be wound up in about four years; and that he did not discover until some time in 1919 that the Large Distilling Co. could continue distilling whiskey for medicinal purposes. The Large Distilling Co. resumed distilling operations in 1919 and continued such operations until forced to discontinue in November, 1921, by virtue of the enactment of the Willis-Campbell Act and failure to secure a permit to continue distilling operations as provided in that Act.

Obsolescence, we have held, is the state or process of becoming obsolete, and the state of obsoleteness is reached when the property which can not be used for any other purpose is no longer useful for the purpose for which it was acquired. *Appeal of Columbia Malting Co.,* 1 B. T. A. 999; *Appeal of Manhattan Brewing Co.,* 6 B. T. A. 952. The right to an obsolescence deduction must be based upon substantial reasons for believing that assets would become obsolete prior to the end of their ordinary useful life; and it must have been known, or believed to have been known, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. *Appeal of Columbia Malting Co., supra; Appeal of Cleveland Home Brewing Co.,* 1 B. T. A. 87. Under the circumstances of this case it can not be held that the tangible assets of the Large Distilling Co. were in a state or condition of becoming obsolete in 1918, 1919, or 1920. Renziehausen thought he was through in 1918, but his convictions were based upon a lack of knowledge of his lawful rights; and in 1919 he resumed distilling operations and continued to carry on such operations until the enactment of the Willis-Campbell Act on or about November 23, 1921. The plant facilities of the Large Distilling Co. were being used at the close of 1919 and 1920 for the purposes for which they had been acquired, and apparently without any diminution as to usage prior to prohibition legislation. It was the passage of the Willis-Campbell Act in

1921 which prohibited the manufacture of medicinal whiskey except under permits issued by the Commissioner of Internal Revenue, and the continued refusal of that officer to issue such permits, which forced the petitioner to discontinue distilling operations and rendered the plant facilities of the Large Distilling Co., other than its bonded warehouses, obsolete; and this event could not have been foreseen in 1918, 1919, or 1920. As Renziehausen testified, the passage of the Willis-Campbell Act came suddenly, like a bolt out of a clear sky, and he did not at the time consider the passage of that Act possible. We find no error in respondent's refusal to allow deductions from the income of 1918, 1919, and 1920, for obsolescence of the tangible properties of the Large Distilling Co. As to 1921, we think obsoleteness of the tangible properties, other than the bonded warehouses, took place wholly within that year, by virtue of the enactment of the Willis-Campbell Act and the continued refusal of the Commissioner of Internal Revenue to issue permits, under that Act, for the manufacture of medicinal whiskey. As to the amount of the deduction for that year, we leave that for determination under the next issue.

The fourth issue in Renziehausen's appeal, which is alternative to the third, is that the respondent erred in refusing to allow a deduction for 1921 for obsoleteness of the tangible properties of the Large Distilling Co. We think that the tangible properties of the Large Distilling Co., other than its bonded warehouses, were rendered entirely obsolete in 1921 by virtue of the enactment of the Willis-Campbell Act, which prohibited the manufacture of medicinal whiskey except under permits issued by the Commissioner of Internal Revenue, and the continued refusal of that officer to issue such permits. We have set out in the findings of fact the cost of these properties, the depreciation sustained thereon, and the salvage value thereof, and upon the basis of those facts we find that the petitioner is entitled to a loss deduction, for 1921, for obsoleteness of the tangible properties of the Large Distilling Co., exclusive of the loss on bonded warehouses, of $147,582.06.

As to the four bonded warehouses, we are of the opinion that petitioner suffered no deductible loss in 1921 in respect thereof. Unlike the other plant facilities which had become obsolete and were abandoned, the warehouses were continued in use for the purpose for which they had been constructed. It is true that these facilities were being used at only 50 per cent of their maximum capacity, and existing conditions at the close of 1921 indicated no greater usage in the future; but the very fact that the facilities were in use is sufficient proof that they had not reached the end of their useful life. Obsoleteness connotes lack of usefulness and absence of value; and where

facilities are being used, whether at maximum or a lesser capacity, neither of these factors are present. The extent to which facilities are being used is of no importance whatever, for if they are being put to any use at all the very opposite of a state of obsoleteness is indicated.

However, it is apparent that the passage of the Willis-Campbell Act, on November 23, 1921, and the continued refusal of the Commissioner of Internal Revenue to issue permits for the manufacture of medicinal whiskey, precluded the possibility of any further use for these warehouses than for the storage of the whiskey on hand on November 23, 1921. For this reason, we are of the opinion that the passage of the Willis-Campbell Act marked the beginning of the obsolescence of these warehouses. When the whiskey stored in these warehouses has been finally withdrawn, the latter will have no useful purpose in petitioner's business, and because of type of construction they can not be adapted or converted to any other purpose than the storage of whiskey in bulk. This latter fact, coupled with those of location and cost of demolition, indicate that at the close of the obsolescence period the value of these warehouses will be nil. It is impracticable to measure the obsolescence period in terms of years, since it is impossible to foretell the length of time which will pass before the whiskey will be withdrawn. A measure, then, to determine the annual deduction for obsolescence, other than that of effluxion of time, must be applied here.

The warehouses in question had a total capacity of 55,000 barrels; and, while there is no evidence in the record bearing directly on this point, we are inclined to believe, from such facts as we have, that this capacity did not exceed the normal needs of the business. The evidence shows that no whiskey was manufactured between May, 1917, and December 31 of that year, because of the restrictions imposed, by the "Food Control" acts, upon the use and transportation of cereals and grains for beverage purposes; and that on January 1, 1918, there were 35,365 barrels of whiskey stored in these warehouses. Had it not been for the restriction imposed by the "Food Control" acts, petitioner could have continued to manufacture whiskey during 1917, and the quantity of whiskey on hand, at January 1, 1918, would have been greater by at least the normal production of the fall and winter distilling season of 1917. Considering these circumstances in conjunction with what is common knowledge—that reserve facilities are indispensable in a growing manufacturing business—we are led to the conclusion that the total capacity of the warehouses was needed in petitioner's business.

The situation confronting this petitioner, then, on November 23, 1921, when the Willis-Campbell Act was passed, was precisely one

in which the useful and valuable capacity of the four bonded warehouses was reduced from 55,000 to 27,393 barrels, with definite indications that no greater capacity could be used, or would be needed, in the future, and that as the whiskey, then on hand, was withdrawn the useful and valuable capacity would be correspondingly diminished.

The deduction for obsolescence, we believe, like those for depreciation and depletion, should be based upon actualities, as nearly as that may be possible; and this is necessary if the deduction is to be a "reasonable" one as the statute contemplates. To require that the entire obsolescence should be spread and deducted from income as the remaining 27,393 barrels of whiskey, at the close of 1921, are withdrawn, would result in postponing the entire obsolescence deduction to years subsequent to 1921, when as a matter of fact obsolescence was sustained in that year to the extent of the reduction in the useful and valuable capacity of the warehouses. In view of the foregoing, it is our opinion that the petitioner is entitled to a deduction, for 1921, for obsolescence of the warehouses, in an amount representing the same proportion of the depreciated cost as the number of barrels representing the reduction in the useful and valuable capacity, plus the number of barrels withdrawn from November 24, to December 31, 1921, to wit: 27,607, bears to 55,000; and that for 1922 petitioner is entitled to a like deduction based upon the proportion which the number of barrels withdrawn during that year, to wit; 1,761, bears to 55,000, or in such manner that when the entire amount of the whiskey has been withdrawn the entire cost of the buildings shall be returned by way of obsolescence and depreciation.

The fifth issue in Renziehausen's appeal, which is alternative to the four preceding it, is that respondent erred in refusing to permit deductions from the income for 1918, 1919, 1920, and 1921, for obsolescence of the tangible and intangible properties of the Large Distilling Co.; and for reasons given in our consideration of the first four issues, we hold the respondent committed error only in respect of his denial of a deduction, for 1921, for obsolescence of the four bonded warehouses.

The sixth issue in Renziehausen's appeal and the first issue of Henry Schuetz, Jr., is that respondent erred in refusing to permit deductions for obsolescence of good will in computing the income of the partnership of Schuetz, Renziehausen & Co. for 1918, 1919, and 1920. The issue has already been decided adversely to the petitioners in *Red Wing Malting Co.* v. *Willcuts*, 15 Fed. (2d) 626, and in *Appeal of Manhattan Brewing Co.*, 6 B. T. A. 952, and upon authority of these cases we find respondent's action in denying the claimed deductions is proper.

At the hearing the parties placed in evidence a joint exhibit showing the cost of the physical properties of the Large Distilling Co.

at January 1, 1918, and the depreciation sustained in 1918, 1919, 1920, and 1921; and the respondent conceded error in failing to allow deductions for depreciation in those years. The deduction to which the petitioner Renziehausen is entitled for depreciation of the physical assets of the Large Distilling Co. is $16,224.15 for 1918 and $16,173.70 for each of the years 1919 and 1920. For 1921 the petitioner is entitled to a deduction for depreciation, including obsolescence of the bonded warehouses, in the amount of $50,088.70, and to no further deduction for depreciation of the other physical assets enumerated in the findings of fact, because the deduction allowed for that year, in this opinion, for obsoleteness, is inclusive of depreciation. For 1922 Renziehausen is entitled to a deduction for depreciation, including obsolescence, of the bonded warehouses, in the amount of $2,827.33. This disposes of the seventh issue in Renziehausen's appeal.

The eighth issue in Renziehausen's appeal is that respondent erred in including in income for 1920 an alleged profit of $31,015.50 from the sale of certain whiskey. At the hearing respondent conceded error as to this issue; and the parties stipulated that as a result of this adjustment the net income shown in the deficiency notice for 1921 and 1922 should be increased $1,637.14 and $5,248.44, respectively.

The ninth issue in Renziehausen's appeal is that respondent erred in refusing to tax the profit from the sale of certain whiskey in 1922 as a capital gain at 12½ per cent, as provided in section 206 of the Revenue Act of 1921. The whiskey in question was that which had been carried on the books of the Large Distilling Co. in the account captioned " Old Whiskey." Petitioner contends that this whiskey was not a part of stock in trade, but his own investment, which had been held for profit for more than two years at the date of the sale; and that the profit derived from the sale thereof in 1922 is a capital gain, subject to tax at 12½ per cent.

Section 206 of the Revenue Act of 1921, so far as material here, reads as follows:

That for the purposes of this title:
(1) The term " capital gain " means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921;

\*     \*     \*     \*     \*     \*     \*

(6) The term " capital assets " as used in this section means property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business), but does not include property held for the personal use or consumption of the taxpayer or his family, or stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year.

Renziehausen, for he and the Large Distilling Co. are the same person, was engaged in the business of distilling and selling whiskey, and as incidents to the conduct of such business, he bought and sold

the product of his own plant whenever warehouse receipts were avaiable for purchase, and he matured the excess of each season's production and sold it to the trade. The petitioner was engaged in more than a distilling business; he was also trading in whiskey. Whiskey was his stock in trade. Beginning in 1908, the excess production of each distilling season was charged on the books of the Large Distilling Co. to the "Old Whiskey" account. As this whiskey matured, or perhaps in some cases prior to complete maturity, the whiskey was sold by, and through the organization of the Large Distilling Co. It is not in evidence whether the profits from the sale of this whiskey, as sales were made in prior years, were included in the earnings of the Large Distilling Co. or withdrawn by the petitioner, or credited to his account. The whiskey sold in 1922 was a part of the whiskey carried in this account and represented the accumulation of excess production of several distilling seasons. It was property of a kind which would properly have been included in the petitioner's inventory, had it been on hand at the close of the year 1922, and, therefore, does not come within the statutory definition of capital assets.

Petitioner makes the alternative contention that all of the income of the Large Distilling Co. for 1922 should be treated as capital gain, since the business was being liquidated from November, 1921, and the inventory became a frozen capital asset when liquidation began. But neither does this contention appear to us to be tenable. Whatever stock in trade the Large Distilling Co. had on hand when liquidation commenced continued to be inventoriable stock in trade until disposed of. Its character was not in the least changed because of the fact that the business was in process of liquidation. We find no error in respondent's action in refusing to treat the profit derived from the sale of old whiskey in 1922 as a capital gain.

The second issue in the appeal of Henry Schuetz, Jr., is that respondent erred in determining a profit of $260.25 from the sale of certain real property in 1920. No evidence was adduced in support of this allegation of error and the issue is not touched upon in the brief filed by the petitioner after the hearing. The issue has been abandoned, apparently, by the petitioner.

Reviewed by the Board.

> *In the Appeal of Frederick C. Renziehausen, Docket No. 10658, order of redetermination will be entered on 15 days' notice, in accordance with Rule 50. In the Appeal of Henry Schuetz, Jr., Docket No. 7458, judgment will be entered for respondent as to the years 1918, 1920, and 1921, and an order of dismissal as to the year 1919.*