*928 OPINION.
Aeundell :
In the Appeal of Yough Brewing Co., 4 B. T. A. 612, we refused to accept as a matter of law the proposition that all breweries became obsolete with the advent of prohibition, as this proposition was based oft assumptions of fact which we did not feel warranted in making. The question in that case, as in the instant appeal, was not what effect prohibition had on the business of manufacturing and selling beer, but what effect it had on the physical assets of the particular taxpayer. The Yough Brewing Co., like the petitioner, upon ceasing the manufacture of beer as a result of prohibition legislation, continued the use of its plant and equipment in the production of other beverages, and in such circumstances we denied the deduction for obsolescence of the facilities. See Star Brewing Co., 7 B. T. A. 377. While the petitioner ceased the manufacture of beer in 1919, there was no complete cessation of its activities, or of the use of facilities, for on the date that the manufacture of beer was discontinued it began the production of a cereal beverage. True, the output was reduced, but as we said of the plant in the Yough case, supra, “ the fact that it was not operated to full capacity is not sufficient evidence that it was then obsolete.” If the facilities are being put to any use at all the very opposite of a state *929 of obsoleteness is indicated. This is true of most of petitioner’s property. To be specific, it applies to buildings B, G, H, M, Q, and R, and to the engine generator set, the horse cleaner, and oats crusher.
. Coincident with the cessation of the manufacture of beer in 1919 as a result of prohibition legislation, petitioner discontinued the use of building O, the electric beer pump, 2 Parker boilers, the Colby racker and racker arm, 2 revenue stamp perforators, label perforators, 300-ton ice machine, 27 fermenting tubs and 46 chip casks.
The evidence is that the cost of demolishing building O would be' greater than the value of the material that could be salvaged and as to the equipment, that it had practically no salvage value after its use was discontinued. Unless we make the assumption, which we declined to make in the case of the Appeal of Yough Brewing Co., supra, we can not say that the imminence of prohibition legislation, which might have been foreseen during the last of the year 1917, would serve to make obsolete these particular facilities upon the date the Eighteenth Amendment became effective. See Frederick C. Benziehausen v. Commissioner, 8 B. T. A. 87. We are satisfied from the evidence, however, that before the end of the year 1919 these facilities and building O had ceased to be of any use to petitioner and that when their use was discontinued, they had no salvage value. Building O could not be used for any other purpose and the cost of wrecking it would have been greater than the amount realizable from the sale of the material it contained; there was no market for the tubs and casks and it was entirely likely that if removed and exposed to the air they would fall to pieces. The machinery could have been removed only at a cost greater than the price that could be realized from its sale. There is some point made by the respondent of such facts as the turning over of the ice machine, the shellacking of the tubs, the painting of the racker and the cleaning of the boilers, apparently on the theory that where any care is given to equipment there is neither obsolescence nor obsoleteness. These facts, however, merely go to the weight of the evidence. If the proof is sufficient to establish the obsoleteness of the facilities and their lack of use to the petitioner and in addition that they have no value, it matters not that petitioner preserved them. We think that the petitioner has established the requisite factors to entitle it to a loss deduction for 1919 for obsoleteness of the tangible property discussed in the preceding paragraph, which should be based on the depreciated cost of the property in 1919.
The use of building P was discontinued in 1915 and the use of the conveyor listed among the equipment was discontinued prior to *930 tlie taxable year. Under such circumstances no deduction may be allowed for them in the year 1919. Although the labelers were no longer used after the fall of 1919, they were thereafter sold. Whether or not this took place within the taxable year is not disclosed by the record, nor is the price received for them furnished us. No evidence with reference to the Quaker City Mill was introduced. The Commissioner must be sustained as to these items.
. Judgment will be entered on 15 days' notice, wider Bule 50.