McMINNVILLE MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38833. Promulgated April 7, 1930.

*Frank J. Albus, Esq.*, for the petitioner.
*Ralph S. Scott, Esq.*, and *E. M. Niess, Esq.*, for the respondent.

OPINION.

MARQUETTE: The parties hereto have stipulated that $5,741.27 of the debts listed in the findings of fact became worthless in 1926. The respondent takes the position, however, that the petitioner in that year attempted to change from the direct method of charging off specific bad debts that it had theretofore employed, to the reserve method, without obtaining the respondent's approval of the change, and that the petitioner is not, therefore, entitled to any deduction on account of bad debts. The petitioner contends that there was a charge-off of specific bad debts.

The evidence, as we view it, sustains the contention of the petitioner. The petitioner prior to 1926 had consistently followed the practice of charging off specific bad debts, and there was no intention on the part of its officers or those in charge of its books to adopt any other method in 1926. There was no reserve for worthless debts on its books against which the debts in question could have been charged. The total amount of the debts that it claimed as a deduction in 1926 was debited to profit and loss and credited on the cash book to reserve for bad debts. The debit was carried directly to profit and loss, while the corresponding credit to " Reserve for Bad Debts " was carried to a suspense account known as "Accounts Charged Off," or " Bad Debts Charged Off." The individual accounts of the debtors were not reduced or closed out for the reason that the petitioner intended to bring suit on some of the accounts and did not wish it to be known that they had been charged off as worthless. We are satisfied that the " Reserve for Bad Debts " on the cash book is a misnomer and that no such account existed.

The statute does not provide any particular manner for charging off a bad debt. *United States Tool Co.*, 3 B. T. A. 492; *Thomas J. Avery*, 5 B. T. A. 872; *George H. Fraser*, 6 B. T. A. 997; *Hammerschmidt & Franzen*, 12 B. T. A. 811; *Zebulon Vance Pate*, 13 B. T. A. 1236. The situation here is specifically the same as that found in *Hammerschmidt & Franzen, supra.* In that case we said:

It is urged, however, by the respondent, that the debt was not charged off on the petitioner's books in December, 1920. It is true that the entries in regard to the debt were made in a rather unusual manner, but nevertheless they had the effect of reducing the petitioner's net income for 1920, and its net worth as shown by its balance sheet. The debt was still carried on the customer's ledger, but that procedure is explained by the fact that although the petitioner considered the debt worthless and had effectually eliminated it from its balance sheet, it did not desire that Schwalge should be informed of these facts.

We are satisfied that the petitioner in closing its books for 1926 intended to adopt the method of charging off specific bad debts rather

than the reserve method; that the debts in question were charged off within the meaning of the statute, and that the petitioner is entitled to a deduction on account of bad debts in the amount of $5,741.27.

*Judgment will be entered under Rule 50.*