POEL & KELLY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 30916.   Promulgated May 29, 1930.

*J. S. Y. Ivins, Esq.*, and *F. E. Youngman, Esq.*, for the petitioner. *George S. Herr, Esq.*, for the respondent.

## OPINION.

Love: Petitioner's claim in regard to the accounts of Francis Peck and the New York Rubber Co. was tacitly abandoned at the hearing and as we are without evidence that they were ascertained to be worthless in the fiscal year ended June 30, 1923, we must sustain the Commissioner's action in disallowing them. There are thus left for our consideration the accounts of the Keystone Rubber Co., Edward Maurer, Inc., and the Racine Auto Tire Co., amounting in all to $58,561.24.

The pertinent provisions of the Revenue Act of 1921 here involved are as follows:

#### DEDUCTIONS ALLOWED CORPORATIONS.

Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*      \*      \*      \*      \*      \*      \*

(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

The questions for our determination are (1) whether these debts were ascertained to be worthless in whole or in part, within the taxable year; and (2) whether they were " charged off " within the taxable year in the meaning and intent of the statute. We have consistently held that bad debts, to be deductible in computing net income, must not only be determined to be worthless, but must be charged off, and that both actions must be performed by the taxpayer within the taxable period. *St. Joseph Valley Bank*, 15 B. T. A. 185; *Ewald & Co.*, 18 B. T. A. 1130.

In regard to the first question, we believe that it is clear from the findings of fact that none of the three accounts remaining for our consideration could have been ascertained to be worthless prior to the beginning of petitioner's fiscal year, which ended June 30, 1923. We believe that it is equally clear that during that year petitioner in good faith and in the exercise of the careful business judgment and discretion of its management and in the opinion of its professional accountant, ascertained, so far as it was possible then to ascertain such things or to make them certain in the minds of the management, that by June 30, 1923, the account of the Key-

stone Rubber Co. was worthless; that no more than 25 per cent of the account of Edward Maurer, Inc., was recoverable; and that no more than 50 per cent of the account of the Racine Auto Tire Co. was recoverable, and subsequent events have fully sustained petitioner's judgment in these cases. Therefore, we hold that petitioner was entitled, for income-tax purposes, to charge off all or such portions of such accounts as had been ascertained to be worthless within the taxable year; that is to say, the sum of $58,561.24.

It remains for us to determine whether the somewhat peculiar method of bookkeeping pursued by petitioner in connection with these accounts constituted such a " charge off " within the meaning and intent of the statute.

In *Ewald & Co.*, 18 B. T. A. 1130, we said:

The right of the taxpayer to the deduction provided in the statute above quoted is not to be destroyed because of its initial failure to put its claim on the technically proper ground. *Rhode Island Hospital Trust Co. v. Commissioner* (C. C. A.), 29 Fed. (2d) 339.

The initial failure of the petitioner in this proceeding to put its claim on the technically proper ground can not operate to destroy its right to deduct the amount of debts ascertained to be worthless and charged off in each taxable year.

The circumstances in *Ewald & Co., supra*, differed somewhat from those in the case that we are now considering, in that, in the earlier case, the taxpayer had for the year 1921 taken a deduction for all debts ascertained to be worthless and charged off within that year, while in 1922, without obtaining permission from the Commissioner, it had set up on its books a reserve for bad debts, and made subsequent additions thereto, which amounts were claimed as deductions in computing net income for the years affected. We sustained the Commissioner in disallowing the deductions claimed by the taxpayer as additions to its reserve for bad debts; but we reversed his refusal to allow as deductions the amounts of debts ascertained by the taxpayer to be worthless in the respective years, and in reaching that conclusion we said:

* * * The statute does not provide any particular manner or method for the charging off of a bad debt. *Thomas J. Avery*, 5 B. T. A. 872. Whether a charge-off has been effected is not dependent upon any special form of bookkeeping, but must be determined from the circumstances in each case. The fundamental purpose in requiring the charge-off is to evidence the worthlessness of the debt, or, in other words, to establish the loss sustained by the taxpayer, and this end is accomplished and the charge-off effected by the elimination of the bad debt from the taxpayer's assets. If the debt is in fact ascertained to be worthless, it should no longer be treated or considered as an asset. *The effective elimination of the debt as an asset meets the statutory requirement as to charge-off.* [Italics supplied.] Cf. *Thomas J. Avery, supra; O. S. Stapley Co.*, 13 B. T. A. 557; *Lipman's, Inc.*, 13 B. T. A. 1274.

In the instant case it is not clear what method, if any, petitioner had adopted to provide for its bad debts prior to its fiscal year under consideration which ended June 30, 1923. The first entry concerning a bad account appears to have been made, so far as the record shows, under date of December 31, 1922, when the account of the St. Louis Rubber Co. was disposed of exactly in accordance with the procedure followed with respect to the other accounts which we are considering, although that account is not here in question. Why that is so, we do not know, for it fell within the taxable year before us, but in the statement accompanying the deficiency notice the Commissioner adds to net income the "increase in reserve for bad debts and special charges, $60,162.43," which does not include the St. Louis Rubber Co.'s account of $10,000.

Direct charges to profit and loss had been made of the exact amounts of the accounts here involved which had been ascertained within the taxable year to be worthless, but instead of placing those amounts to the credit of the various accounts as they appeared on the general office books, the credit was made in the private ledger (where also the profit and loss account was kept) in an account denominated "reserve for bad and doubtful accounts"; so that while these accounts receivable were, for the purposes of the management, permitted to stand on the general office books at their undiminished value, they were in fact and in effect offset and counterbalanced to the full amount of their ascertained worthlessness by the credit carried in the private ledger. We think that the fact that a private ledger is just as much an integral and essential part of the general books of account as though the accounts contained therein were spread upon such general books is so well recognized and understood that it is hardly necessary to emphasize that fact or to enter an argument in support of it beyond the statement that no balance sheet could be prepared if the accounts in the private ledger were omitted from it.

Whether a charge-off has been effected must be determined from the circumstances in each case and is not dependent upon any special form of bookkeeping. We hold that petitioner ascertained to be worthless and charged off within the taxable year ended June 30, 1923, the debts of the Keystone Rubber Co. in the amount of $20,-143.36, of Edward Maurer, Inc., in the amount of $5,250, and of the Racine Auto Tire Co. in the amount of $33,167.88—a total of $58,-561.24, and that it is therefore entitled to take that total amount as a deduction from gross income in its income-tax return rendered for its fiscal year ended June 30, 1923. The tax will be recomputed accordingly.

*Judgment will be entered under Rule 50.*