## First National Bank of Key West, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 45186.   Promulgated June 10, 1932.

*Frederick L. Pearce, Esq.*, for the petitioner.
*O. J. Tall, Esq.*, for the respondent.

OPINION.

McMahon: Petitioner assigns as error the respondent's failure to deduct from its income for the years 1925, 1926 and 1927, any allowance for obsolescence of its banking building, alterations and fixtures. Section 234 of the Revenue Act of 1926 provides for the deduction by corporations of a "reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence."

The petitioner contends that, due to the beginning of the shifting of the business center of Key West, Florida, away from the location of the petitioner's building in the latter part of 1925, its officers were justified in determining at that time the petitioner's building would become obsolete at the end of five years and that it is entitled to deductions in each of the years 1925, 1926 and 1927 of a pro rata portion of its capital investment in the bank.

Obsolescence, we have held, is the state or process of becoming obsolete, and the state of obsolescence is reached when the property is no longer useful for the purpose for which it was acquired. *Columbia Malting Co.*, 1 B. T. A. 999; *Manhattan Brewing Co.*, 6 B. T. A. 952; *Frederick C. Renziehausen et al.*, 8 B. T. A. 87; and *Tennessee Fibre Co.*, 15 B. T. A. 133.

In the last cited case we stated:

Webster's New International Dictionary defines "obsolescent" or "obsolescence," "to wear out gradually; to fall into disuse," and the word "obsolete" is defined to mean "no longer in use; disused; neglected; as, an *obsolete* word; an *obsolete* statute." Obsolescence as used in the statute is the state or process of becoming obsolete and the provision allowing a deduction therefor is intended to care for losses of capital which take place over a longer period than the taxable year. *William Zakon*, 7 B. T. A. 687. The state of obsoleteness is reached when the property which can not be used for any other purpose is no longer economically useful for the purpose for which it was acquired, *Frederick C. Renziehausen et al.*, 8 B. T. A. 87, and is therefore abandoned. * * *

In *Frederick C. Renziehausen et al., supra*, we stated:

The right to an obsolescence deduction must be based upon substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life; and it must have been known, or believed to have been known, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur.

In the instant proceeding, considering all the evidence, we conclude that the petitioner was not justified in concluding that the bank property would have to be abandoned and would become obsolete as claimed by petitioner. The petitioner was the only bank in Key West and the shifting of the business center would not deprive petitioner of its business, since all businesses requiring banking services would have to continue patronizing petitioner. There was no showing that in the latter part of 1925 there was any likelihood that any other bank would be established there or that petitioner would lose any of its business. We do not believe that there was any probability that a new bank would be established, particularly since in 1913 another bank had failed. The evidence discloses that the petitioner did not at any time actually lose any of its business due to the moving of the business center.

Furthermore, from the evidence it appears that petitioner made additions to its building in 1926 at a cost of $2,630.91. This is inconsistent with the petitioner's claim that its building was becoming obsolete.

At the time of the hearing in this proceeding, which was on November 12, 1930, the petitioner was still occupying the same bank building and for all we know may still be occupying it. Thus, at about the end of the claimed obsolescence period the property in question had not become obsolete and there was no showing that it would become obsolete or if so, when it would do so. It is true that petitioner had purchased a lot in the new business center, only five blocks or 2,000 feet from the bank building in question, but at the time of the hearing no steps had been taken toward erecting a new building and it was not shown when, if ever, petitioner would construct a new building.

There was testimony offered for the purpose of showing that the bank building in question could not be sold at public auction for $10,000, but even if this be so, it does not necessarily give rise to a right to an obsolescence deduction. We have heretofore held that mere decline in value of the property does not give rise to a right to a deduction. *Washington Catering Co.*, 9 B. T. A. 743, and *United Business Corporation of America*, 19 B. T. A. 809.

The petitioner relies upon *Burnet* v. *Niagara Falls Brewing Co.*, 282 U. S. 648, wherein the Supreme Court stated that obsolescence may arise as the result of the shifting of business centers. However, as stated hereinabove, the petitioner has not shown that its property was becoming obsolete. Obsolescence is a question of fact, to be determined from the evidence in each case. *Columbia Malting Co.*, supra; *Corsicana Gas & Electric Co.*, 5 B. T. A. 565; and *Conley Tin Foil Corporation*, 17 B. T. A. 65. In *Burnet* v. *Niagara Falls Brewing Co.*, supra, the taxpayer, as held by the Supreme Court, was

abundantly justified in the early part of 1918 in concluding that its property would become useless for the purpose for which it was acquired, but this is not true in the instant proceeding. In that case the taxpayer had claimed deductions for obsolescence in the years 1918 and 1919 on account of the imminence of national prohibition. At the time the taxpayer determined the obsolescence period it could not foresee the definite date that prohibition would go into effect. The Supreme Court in 1931 took judicial notice that the Eighteenth Amendment to the Constitution took effect on January 16, 1920, which was after the obsolescence period claimed by the taxpayer, and used that fact in arriving at its conclusion that the taxpayer's property did become obsolete, and also in determining that the obsolescence period consisted of the years 1918 and 1919.

We appreciate that in *Burnet* v. *Niagara Falls Brewing Co.*, *supra*, the Supreme Court by way of dicta recognizes that a shifting of the business center may give rise to obsolescence; but it is obvious that it is not sufficient to merely show that a business center has shifted; and that in addition it must be shown that it was reasonable to expect that the shifting of the business center would cause the obsolescence. This latter the petitioner has failed to show.

On the other hand, it has produced proof which supports the inference that it was not reasonable to expect that the shifting of the business center would actually cause obsolescence within the alleged five-year period.

Mere inconvenience to petitioner and its patrons occasioned by added distance of a few blocks of driving or walking, under the circumstance herein, is not sufficient to establish obsolescence.

After carefully considering all the evidence, we hold that petitioner is not entitled to the claimed deductions in the years 1925, 1926 and 1927 for obsolescence of its property, and the respondent's determination in this regard is approved.

Petitioner contends that it is entitled to a deduction in the amount of $15,000 from gross income for the year 1927, representing that portion of the Florida Lightbourne debt which was ascertained to be worthless in that year.

Section 234(a)(5) of the Revenue Act of 1926 provides:

(a) In computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\*     \*     \*     \*     \*     \*     \*

(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

From the evidence it clearly appears that the petitioner did ascertain that debt to be worthless to the extent of $15,000 in the year

1927. The petitioner has followed the practice of charging off actual bad debts rather than employing the reserve method. During the year 1927 the petitioner charged off specific debts in the approximate amount of $16,000, but did not include therein the item of $15,000, but set up a reserve for loss in the amount of $15,000 on account of the Lightbourne debt. It is the contention of the respondent that since petitioner has failed to show that it had permission from the Commissioner to use the reserve method, petitioner is not entitled to deduct from gross income the item of $15,000 which was charged to a reserve.

However, as stated in *Ewald & Co.*, 18 B. T. A. 1130, 1132, " The right of a taxpayer to the deduction provided in the statute above quoted is not to be destroyed because of its initial failure to put its claim on the technically proper ground." If the amount of $15,000 was charged off within the meaning of the statute, then the petitioner is entitled to the claimed deduction. Whether a charge-off has been effected is not dependent upon any special form of bookkeeping, but must be determined from the circumstances in each case. *Ewald & Co., supra.*

At the hearing the president of petitioner testified as follows:

Q. In other words, the amount of $15,000 was not claimed as a deduction from taxable net income in this return?

A. I do not think so. The Lightbourn matter was like this: We knew we had the loss, but we had $16,000 to charge off that year, and I did not want to make it thirty-two or thirty-three, so we transferred that $15,000 to a reserve account to take care of that specific loss.

I personally was misinformed that we could do that, otherwise we would have charged it right into the bad loss, because it was not anything else but a bad loss.

\*        \*        \*        \*        \*        \*        \*

Under substantially similar circumstances we have heretofore held that a charge-off was effected. *O. S. Stapley Co.*, 13 B. T. A. 557; *Dillon Supply Co.*, 20 B. T. A. 404; *McMinnville Manufacturing Co.*, 19 B. T. A. 486; and *Poel & Kelly, Inc.*, 19 B. T. A. 1317. Upon the authority of those cases we hold that the petitioner is entitled to deduct the amount of $15,000 from its gross income of 1927.

The petitioner alleges that the respondent erred in adding to its income for the years 1925, 1926, and 1927, respectively, amounts of $2,375, $980.02, and $1,965.27, collected in those years upon the principal of loans written off in previous years as uncollectible. From the evidence we can not determine that these amounts were not properly charged off in the prior years, and therefore, under our decisions in *Excelsior Printing Co.*, 16 B. T. A. 886, and *Iberville Wholesale Grocery Co., Ltd.*, 17 B. T. A. 235, we hold that the

respondent properly included such amounts in gross income in the years in which they were collected.

*Judgment will be entered under Rule 50.*