## Appeal of COLUMBIA MALTING CO.          Docket No. 449.

In the absence of evidence upon which a reasonable allowance can be predicated, a deduction on account of the obsolescence of tangible assets used in the manufacture of malt is not permitted.

Submitted February 24, 1925; decided April 13, 1925.

*James A. Taylor* and *Worth E. Caylor, Esqs.*, for the taxpayer.

*John D. Foley, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

This appeal involves income and profits taxes for the eight months' period ended August 31, 1918, and the fiscal year ended August 31, 1919, in the respective amounts of $2,614.10 and $35,660.29, the deficiency being predicated upon the disallowance by the Commis-

sioner of amounts deducted by the taxpayer on account of the alleged obsolescence of tangible assets used in the manufacture of malt on account of prohibition legislation.

### FINDINGS OF FACT.

The taxpayer is an Illinois corporation located at Chicago, and for many years was engaged in the business of manufacturing malt and of selling the same mainly to distillers and brewers.

Because of the peculiar nature of the plant, equipment, and machinery, the same could not be used for any other purpose than the manufacture of malt. Prior to November 29, 1918, the taxpayer carried the value of its plant upon its books at depreciated cost in the amount of $561,823.67. On November 29, 1918, it wrote off of its plant value as obsolescence the amount of $300,000, and the book value of the plant, machinery, and equipment at the close of the fiscal year ended August 31, 1920, was $236,577.70.

The production, purchase, and shipment of malt by the taxpayer during the years 1917 to 1924, inclusive, was as follows:

| | Malt produced (in bushels). | Malt purchased (in bushels). | Malt shipped (in bushels). |
|---|---|---|---|
| 1917 | 1,852,216 | | 1,535,338 |
| 1918 | 501,302 | 13,088 | 802,206 |
| 1919 | 1,343,739 | | 1,064,301 |
| 1920 | 320,767 | 4,149 | 219,188 |
| 1921 | 350,158 | 33,628 | 641,558 |
| 1922 | | 80,250 | 112,761 |
| 1923 | 244,645 | 48,370 | 96,734 |
| 1924 | 10,570 | 83,085 | 260,001 |
| Totals | 4,623,397 | 262,570 | 4,732,087 |

The net income of the taxpayer during the years 1916 to 1923, inclusive, was as follows:

| | |
|---|---|
| 1916 | $122,723.01 |
| 1917 | 243,159.98 |
| 1918 | 73,633.13 |
| 1919 | 160,850.36 |
| 1920 (deficit) | 38,451.30 |
| 1921 (deficit) | 159,539.27 |
| 1922 | 23,263.97 |
| 1923 (deficit) | 54,551.55 |

In auditing the estate of Edwin A. Graff (who died May 4, 1920, owning at his death 1,500 shares of the taxpayer's stock), and for the purpose of determining the Federal estate tax, the Estate Tax Unit determined the value of the entire 7,000 shares of capital stock in the taxpayer corporation in the amount of $527,450, as compared with the then par value of the stock in the amount of approximately $700,000.

Business done by the taxpayer after January, 1920, was confined to the sale of malt to near-beer manufacturers and to cereal beverage manufacturers, to dealing in grain on futures, and to the use of its buildings for grain storage purposes.

The taxpayer manufactured no malt after January, 1924, and had not by that date sold or otherwise disposed of its plant and facilities, but used the same thereafter for storage purposes.

DECISION.

The determination of the Commissioner is approved.

OPINION.

TRAMMELL: The question is whether the taxpayer is entitled to a deduction of a reasonable allowance on account of the obsolescence of its tangible assets used in the malt business during 1918 and 1919.

Tangible property acquired for the purpose of manufacturing malt which, because of its peculiar nature, can not be used for any other purpose is obsolete when it is no longer useful for that purpose. Obsolescent is the state or process of becoming obsolete.

The taxpayer's business was not prohibited by prohibition legislation. Legal uses for its product remained and it continued to supply malt to manufacturers of cereal beverages and other products. There was no hiatus in its business and it continued without interruption to supply the same product it had manufactured before prohibition and used the same assets in doing so.

There is nothing in the evidence which would indicate that the taxpayer knew, or had reasonable ground to believe, in 1918 or 1919, the years in which it claimed deductions on account of the obsolescence of its tangible assets, that such assets would not be useful in its business after the effective date of prohibition. There is no evidence that it reached the conclusion then, based upon conditions known to exist, that it would at any time in the future for any reason be required to abandon or scrap its tangible assets prior to the expiration of their ordinary useful life. In other words, existing conditions did not indicate that the commercial life of the assets would be shorter than their physical life.

In order that the taxpayer may be entitled to the obsolescence deduction in the years involved, there must have been substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life, and second, it must have been known, or believed to have been known, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. The purpose of the statute is to permit the capital invested in assets to be returned to a taxpayer out of earnings over the life of the property in the business. A reasonable deduction is allowed on account of the exhaustion, wear, and tear of property. This includes obsolescence, if the property is becoming obsolete, so that by the time it reaches that state the entire cost thereof will be restored. While it is known that physical property is ordinarily subject to exhaustion, wear, and tear from use in the business, it may not be known that it is also becoming obsolete. Whether it is, is a question of fact in each case. When it is found that property is becoming obsolete, a deduction on that account can only be determined by ascertaining, as accurately as possible, when the property may be expected, under the circumstances, to be no longer commercially useful notwithstanding its physical condition. In the case of a deduction on account of exhaustion, wear and tear of property used in the the business, if it can not be determined that the property is subject to wear, tear, and exhaustion, or what the approximate

life of the property, under all the facts and circumstances, is, there is no basis for determining the deduction. With respect to obsolescence, if it can not be determined that the assets will become obsolete prior to the estimated date of the physical exhaustion thereof, or if a reasonably definite date can not be ascertained, there are no means of determining what is a reasonable allowance on that account.

The taxpayer in this appeal charged off the amount of $300,000 on its books in 1918, apparently on acount of the estimated reduction in value of its assets. The record contains no evidence as to how the figures were arrived at. It appears that the taxpayer reached the conclusion that, at some indefinite time in the future, it would probably have to abandon its assets, and considered that such an amount of loss or reduction in value of assets would be realized if and when that event occurred. It was not known, however, in 1918, that the assets would at any time become obsolete. Deductions from gross income in determining net income are not allowed on such a basis.

For the foregoing reasons, it is the opinion of the Board that the taxpayer is not entitled to deductions in 1918 and 1919 on account of obsolescence of its tangible assets.