T.C. Memo. 1995-521


UNITED STATES TAX COURT


BRUCE SELIG AND ELAINE SELIG, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19151-93.              Filed October 31, 1995.

P exhibited "exotic automobiles", state-of-the-
art, high technology vehicles with unique design
features or equipment, for a fee.  Ps claimed
depreciation deductions for such automobiles.  P's
wholly owned S corporation made expenditures related to
P's plans to open an exotic car entertainment complex.
     1.  <u>Held</u>:  The exotic automobiles were subject to
obsolescence and, thus, were depreciable under secs.
167 and 168, I.R.C.
     2.  <u>Held</u>, <u>further</u>, the expenditures made by P's
wholly owned S corporation are nondeductible under sec.
162(a), I.R.C., on account of being preopening expenses
not incurred in a trade or business of the corporation.
     3.  <u>Held</u>, <u>further</u>, the sec. 6661, I.R.C.,
additions to tax and sec. 6662, I.R.C., penalties
determined by respondent are, in part, sustained.

Richard J. Sapinski and Robert J. Alter, for petitioners.

Robert A. Baxter, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent determined deficiencies in income tax and additions to tax as follows:

|       |            | Additions to Tax and Penalties | | |
|       |            | Sec. | Sec. | Sec. |
| Year  | Deficiency | 6651(a) | 6661 | 6662(a) |
| 1987  | $88,837    | ---      | $39,264 | ---      |
| 1988  | 62,391     | ---      | 13,020  | ---      |
| 1989  | 58,838     | $22,260  | ---     | $11,768  |
| 1990  | 51,762     | ---      | ---     | 10,352   |

After concessions, the issues remaining for decision are
(1) whether petitioners are allowed depreciation deductions with regard to certain "exotic automobiles" owned and exhibited by petitioner husband, (2) whether Exotic Bodies, Inc., an S corporation within the meaning of section 1361(a)(1), was engaged in a trade or business such that petitioners may claim certain losses from that corporation, (3) the basis of certain shares of stock in BSG Corp., and (4) petitioners' liability for the additions to tax under section 6661 and penalties under section 6662(a) set forth above.

In their opening brief, petitioners proposed no findings of fact or made any argument with regard to the basis of any shares in BSG Corp.  In her opening brief, respondent argued that, since

petitioners bear the burden of proof, and have failed to introduce any evidence, the Court should find against petitioners and hold for respondent on that issue. In their reply brief, petitioners state that, subsequent to the trial, petitioners and respondent "agreed that the adjustment to the capital gain realized by petitioners in 1989 with respect to Bruce's basis in BSG Corp. proposed by respondent was correct." We take that as a concession by petitioners and, on that basis, sustain so much of the deficiencies as relate to that issue. In a footnote, petitioners added:

> Petitioners contend that the parties' agreement with respect to respondent's determination of Bruce's basis in BSG Corp. in this case allows them to correct their erroneously computed share of BSG Corp.'s subchapter S corporation losses in 1985 and 1986 under I.R.C. § 1311-1314.

Suffice it to say that neither 1985 nor 1986 is a year before us, and, therefore, we have no jurisdiction to determine any overpayment for either of such years. See sec. 6512(b).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact filed by the parties and attached exhibits are incorporated herein by this reference.

Petitioners resided in Cherry Hill, New Jersey, at the time the petition was filed.

Petitioners are husband and wife, who made joint returns of income for each of the years in question.

Petitioner husband (petitioner) is a successful businessman. In 1983, petitioner opened a limousine leasing business under the name "Scott's Limo & Leasing" (Scott's Limo). Scott's Limo was conducted as a sole proprietorship. Exotic automobiles are state-of-the-art, high technology vehicles with unique design features or equipment. In 1987 and 1988, petitioner purchased the following exotic automobiles (the exotic automobiles) to be exhibited at car shows:

| Year of Purchase | Type | Cost |
|---|---|---|
| 1987 | Lotus Pantera | $63,000 |
| 1987 | Lotus Espirit | $48,000 |
| 1988 | Gemballa FerrariTestarossa | $290,453 |

During the years in issue, Scott's Limo displayed the exotic automobiles at car shows and earned fees for doing so. For 1987 through 1990, Scott's Limo received gross income with respect to the exotic automobiles as follows:

| Year | Gross Income |
|---|---|
| 1987 | $8,555 |
| 1988 | 38,120 |
| 1989 | 24,295 |
| 1990 | 25,760 |

The exotic automobiles did not have license plates and were not set up to be used on the street.  They were not driven and were used exclusively for car shows or related promotional photography.

Petitioners claimed the following depreciation deductions with regard to the exotic automobiles:

| | Depreciation Claimed In: | | | |
|---|---|---|---|---|
| Automobile | 1987 | 1988 | 1989 | 1990 |
| Lotus Pantera | $12,600 | $20,160 | $12,096 | $7,258 |
| Lotus Espirit | 9,600 | 15,360 | 9,216 | 5,530 |
| Gemballa Ferrari Testarossa | | 58,091 | 92,945 | 55,767 |

Exotic Bodies, Inc. (the corporation), is a New Jersey corporation.  At all times here relevant, the corporation was wholly owned by petitioner.  The corporation was organized in 1987.  For 1988, 1989, and 1990, the corporation was an S corporation within the meaning of section 1361(a)(1).  For those years, the corporation made its Federal income tax returns on the basis of a calendar year.  The corporation was formed for the purpose of putting together exotic cars for shows as well as for cross-promoting different products (e.g., automobile-related paraphernalia, such as T-shirts and frames for license plates). The corporation was a marketing vehicle for the promotional aspects of the exotic cars owned by petitioner.

For 1988, the corporation reported gross receipts of $8,369 and an ordinary loss of $31,531 on its Federal income tax return. Those gross receipts, along with $16,405 of corporate expenses, which were accepted as verified by respondent, were allocated by respondent to Scott's Limo. Petitioners have agreed to that adjustment.

For both 1989 and 1990, the corporation reported gross receipts of zero on its Federal income tax return. For 1989, it reported an ordinary loss of $13,218; for 1990, it reported an ordinary loss of $13,357. Neither the corporation's 1989 return nor its 1990 tax return reflects either a cost of goods sold, an inventory, or any wages paid to employees. The corporation sold no merchandise during either 1989 or 1990.

OPINION

## I. Introduction

We must decide (1) whether certain automobiles owned by petitioner give rise to deductions for depreciation for tax purposes, (2) whether petitioner's S corporation was in a trade or business, so that petitioners may claim certain losses incurred by such corporation, and (3) whether petitioners are liable for certain additions to tax. Petitioners bear the burden of proof. Rule 142(a).

## II. Depreciation

Section 167(a) provides that a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in

the trade or business or of property held by the taxpayer for the production of income shall be allowed as a depreciation deduction.[1]

Generally, section 168(a) provides that the depreciation deduction provided by section 167(a) for any tangible property shall be determined by using certain applicable methods, periods, and conventions.[2]

Exotic automobiles are state-of-the-art, high technology vehicles with unique design features or equipment. Petitioner owned exotic automobiles that, during 1987 through 1990, he exhibited for a fee. The fees earned by petitioner for such

---

[1]    Sec. 167(a) provides as follows:

General Rule.--There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)--

        (1) of property used in the trade or business, or
        (2) of property held for the production of income.

[2]    Sec. 168(a) provides as follows:

Accelerated Cost Recovery System

General Rule.--Except as otherwise provided in this section, the depreciation deduction provided by section 167(a) for any tangible property shall be determined by using--

        (1) the applicable depreciation method,
        (2) the applicable recovery period,
        (3) the applicable convention.

exhibitions were substantially less than the depreciation deductions petitioner claimed with respect to such automobiles.

The parties do not dispute either that (1) the exotic automobiles are tangible property or (2) the exotic cars were used in petitioner's trade or business. Also, they do not dispute any aspect of applying section 168 to the exotic automobiles if we conclude that section 168 is applicable to the exotic automobiles. The dispute between the parties is whether a depreciation deduction is allowable under section 167(a) for automobiles held in a pristine condition and exhibited for a fee.

The long and the short of it is yes, providing the automobiles are subject to obsolescence. We have found that the exotic automobiles were state-of-the-art, high technology vehicles with unique design features or equipment. We have no doubt that, over time, the exotic automobiles would, because of just those factors, become obsolete in petitioner's business. The fact that petitioners have failed to show the useful lives of the exotic automobiles is irrelevant. Cf. Liddle v. Commissioner, 103 T.C. 285, 296-297 (1994), affd. 65 F.3d 329 (3d Cir. 1995); Simon v. Commissioner, 103 T.C. 247 (1994), affd. __ F.3d __ (2d Cir. 1995)

In the Liddle and Simon cases, we interpreted section 168, as added to the Code by section 201(a) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172, 204 (sec. 168 (1981)). The operative term in section 168 (1981) is

"recovery property". The term "recovery property" is defined in relevant part to mean "tangible property of a character subject to the allowance for depreciation * * * used in a trade or business". Sec. 168(c)(1) (1981). In the Simon case, we dealt with two antique violin bows that the taxpayers, both professional musicians, used in that trade or business. In the Liddle case, we dealt with an antique viol, also used by a professional musician in his trade or business. In both cases, we rejected the Commissioner's argument that, for the instruments to be property of a character subject to the allowance for depreciation (i.e., recovery property within the meaning of section 168(c)(1) (1981)), the taxpayers had to show the useful life of the property. Liddle v. Commissioner, supra at 296; Simon v. Commissioner, supra at 264. We found it sufficient that the taxpayers had proven that the instruments were subject to exhaustion, wear and tear, or obsolescence. Liddle v. Commissioner, supra at 296-297; Simon v. Commissioner, supra.

In 1986, Congress extensively revised and restated section 168. Tax Reform Act of 1986 (TRA 86), Pub. L. 99-514, sec. 201(a), 100 Stat. 2121. As restated, section 168 is applicable to property placed in service after 1986. TRA 86, Pub. L. 99-514, sec. 203(a)(1), 100 Stat. 2143. The term "recovery property" does not appear in section 168, as restated. There is no indication, however, that Congress intended to reimpose the requirement, eliminated by ERTA, that a taxpayer must show the

useful life of property if the taxpayer is to determine the section 167 depreciation deduction under section 168. Therefore, we shall follow Liddle v. Commissioner, supra, and Simon v. Commissioner, supra, in interpreting section 168, as restated. Accordingly, if petitioners can show that the exotic automobiles were subject to exhaustion, wear and tear, or obsolescence, they are entitled to the depreciation deductions that they claimed.

Petitioners do not seriously attempt to prove that the exotic automobiles were subject to wear and tear in the sense of physical deterioration. Indeed, they state that obsolescence is the principal basis for their claim of depreciation deductions. Respondent argues that petitioners have failed to prove that the exotic automobiles are subject to obsolescence.

From the beginning, it has been clear that a taxpayer could recover the cost of business property over a period shorter than the ordinary useful life of the property if the taxpayer could show that the assets would become obsolete in the business prior to the end of such ordinary useful life. See, e.g., Columbia Malting Co. v. Commissioner, 1 B.T.A. 999, 1001 (1925). Section 1.167(a)-9, Income Tax Regs., addresses obsolescence. In pertinent part, it states:

> The depreciation allowance includes an allowance for normal obsolescence which should be taken into account to the extent that the expected useful life of property will be shortened by reason thereof. Obsolescence may render an asset economically useless to the taxpayer regardless of its physical condition. Obsolescence is attributable to many causes, including technological

improvements and reasonably foreseeable economic changes. Among these causes are normal progress of the arts and sciences, supersession or inadequacy brought about by developments in the industry, products, methods, markets, sources of supply, and other like changes, and legislative or regulatory action. * * *

In Columbia Malting Co. v. Commissioner, supra at 1001, we said:

In order that the taxpayer may be entitled to the obsolescence deduction in the years involved, there must have been substantial reasons for believing that the assets would become obsolete prior to the end of their ordinary useful life, and second, it must have been known, or believed to have been known, to a reasonable degree of certainty, under all the facts and circumstances, when that event would likely occur. * * *

Under section 168(a), we need not concern ourselves with the second part of that test (when obsolescence would occur), since we need not determine the actual useful life of the property. As to the first part of the test, we assume that the "ordinary" useful life of the exotic automobiles in petitioner's trade or business (as show cars) was indeterminable. Petitioners have introduced no evidence from which we could find that the exotic automobiles were subject to wear and tear or exhaustion. Nevertheless, we are convinced that the exotic automobiles had a limited useful life as show cars.

The exotic automobiles are state-of-the-art, high technology vehicles with unique design features or equipment. Petitioner testified that show cars such as the exotic automobiles:

are state of the art and within three years or four years, five years, there could be new cars that are

more state of the art and cars change based on their technological opulence * * *

A business associate of petitioner's, Leon Altemose, who had staged exotic car shows testified:

These highly customized, modified exotic cars have a limited life and I think it's about a year, typically, maybe two years and then they start to drop significantly in value because they are replaced by something better.

We do not need to determine the precise useful life of the exotic automobiles. Indeed, petitioner testified that some of the exotic automobiles might be shown for many years. Nevertheless, we are convinced that the exotic automobiles, precisely because of their nature as state-of-the-art, high technology vehicles, had a useful life as show cars shorter than their ordinary useful life and, thus, suffered obsolescence. We so find.

Explicit in our finding is a finding that the exotic automobiles were not museum pieces of indeterminable useful life. Respondent cites us the U.S. Court of Claims' decision in Harrah's Club v. United States, 228 Ct. Cl. 650, 661 F.2d 203 (1981). At issue there was the cost of restoring antique automobiles primarily held for display in connection with the taxpayer's trade or business. The taxpayer argued that the restoration costs were depreciable over the period in which the restoration could be estimated to be useful in the business of the taxpayer. The U.S. Court of Claims disallowed a depreciation deduction in part on the basis that: "The evidence establishes

that there is no limit on the useful life of a restored car or other vehicle as a museum object." Id., 661 F.2d at 207. In Simon v. Commissioner, 103 T.C. at 264, we acknowledged that, to qualify as recovery property, in the case of a passive business asset that suffered no wear and tear, a taxpayer would have to prove a determinable useful life. An example of a passive business asset that normally would suffer no wear and tear is a painting displayed for business purposes. E.g., Clinger v. Commissioner, T.C. Memo. 1990-459 (painting purchased by a professional artist and displayed in part for marketing reasons not recovery property for failure to prove determinable useful life). Once a taxpayer establishes that an asset is subject to exhaustion, wear and tear, or obsolescence, however, we need not concern ourselves with the particular useful life of the asset. Liddle v. Commissioner, 103 T.C. at 296-297; Simon v. Commissioner, supra. It is of course possible that the exotic automobiles might some day become museum pieces. Respondent suggests that they were museum pieces, but she offers no evidence to support that claim. We are satisfied that the exotic automobiles were show cars, which, because of obsolescence, had a limited useful life, not museum pieces with an indeterminable useful life. The facts of the Harrah's Club case are distinguishable.

At the conclusion of the trial in this case, respondent stated that she no longer would rely on section 183 as a basis

for disallowing any deductions in this case.  Accordingly, we will not inquire whether petitioner's activity of showing the exotic automobiles was an activity engaged in for profit.

III.  Trade or Business

For 1989 and 1990, respondent disallowed losses passed through from the corporation to petitioner.  Respondent disallowed such losses in their entirety, in the amounts of $13,218 and $13,357, for 1989 and 1990, respectively.  The corporation was an S corporation, and petitioner was entitled to take into account his pro rata share of the corporation's items of income and loss.  See sec. 1366(a).  One ground on which respondent disallowed the losses was that, during 1989 and 1990, the corporation was not carrying on a trade or business as required by section 162(a).

Section 162(a) provides in pertinent part:  "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".

The corporation reported neither gross receipts nor gross income for either 1989 or 1990.  Its ordinary losses reported on its Federal income tax returns were composed of the following items:

|  | 1989 | 1990 |
|---|---|---|
| Taxes | $38 | $45 |
| Interest | 1,154 | 892 |
| Advertising | 38 | 100 |

| | | |
|---|---|---|
| Amortization | 131 | 3,057 |
| Bank charges | 50 | 20 |
| Prof. fees | 460 | --- |
| Travel | 895 | --- |
| Meals & entertainment | 1,511 | --- |
| Telephone | 8,941 | 7,276 |
| Leasing | --- | 1,130 |
| Office exp. | --- | 219 |
| Postage | --- | 618 |
| Total | $13,218 | $13,357 |

As to the corporation's activities in 1989 and 1990, petitioner testified that, for 1989:

> It was active but it was not active in marketing of the clothing at that point in time. There was not a lot of sales being generated at that point in time. We were actively marketing the fundraising at that point in time.

and, for 1990:

> We were fulfilling all the obligations for the future shareholders as well as the shareholders that were putting Exotic Bodies together. All marketing, all research, all development.

Petitioners' argument is that the corporation had entered into business in 1988 and that its expenditures in 1989 and 1990 "were to extend its existing line of business to the higher end merchandise market". Petitioners rely on Briarcliff Candy Corp. v. Commissioner, 475 F.2d 775 (2d Cir. 1973), revg. T.C. Memo. 1972-43, for the proposition that a taxpayer's expenditures in furtherance of its attempt at expansion are currently deductible under section 162(a). Respondent argues that, in 1989 and 1990, the corporation had not yet entered into a trade or business and that its expenditures during those years were nondeductible

preopening expenses.  Respondent cites <u>Richmond Television Corp.</u>
<u>v. United States</u>, 345 F.2d 901, 907 (4th Cir. 1965), vacated and
remanded on other issues 382 U.S. 68 (1965), original holding on
this issue reaffd. 354 F.2d 410, 411 (4th Cir. 1965), overruled
on other grounds <u>NCNB Corp. v. United States</u>, 684 F.2d 285, 289
(4th Cir. 1982), for the proposition that preopening expenses are
nondeductible:

> The uniform teaching of  * * * [certain prior] cases is
> that, even though a taxpayer has made a firm decision
> to enter into business and over a considerable period
> of time spent money in preparation for entering that
> business, he still has not "engaged in carrying on any
> trade or business" within the intendment of section
> 162(a) until such time as the business has begun to
> function as a going concern and performed those
> activities for which it was organized.  [Fn. refs.
> omitted.]

We agree with respondent that the expenditures made by the
corporation during 1989 and 1990 were nondeductible preopening
expenses.  Petitioners have not carried their burden of proving
that the corporation had engaged in carrying on any trade or
business before or during the years in question.  Although the
corporation may have reported gross receipts from the sale of
what petitioners characterize as "mostly low cost merchandise"
during 1988, such receipts and the corporation's verifiable
expenses for 1988 were allocated by respondent to Scott's Limo.
Petitioners agreed to that adjustment.  From those facts, we
conclude, and find, that the receipts and expenditures were
incurred in the trade or business of Scott's Limo, not in a trade

or business of the corporation. We are convinced, and find, that the corporation was engaged in no trade or business during 1988. Likewise, we are convinced, and find, that the corporation was engaged in no trade or business during either 1989 or 1990. We have found that the corporation sold no merchandise in either 1989 or 1990. Petitioners argue that:

> In 1989 and 1990, * * * [petitioner] refocused Scott's Limo's car exhibition activities on becoming a fixed-site exhibitor of its exotic cars at his planned exotic car entertainment complex. Likewise, * * * [the corporation] refocused its activities during these years in an effort to continue to compliment [sic] Scott's Limo's new-found market as the lead exhibitor at the entertainment complex. * * *

The corporation was to play some role with regard to Scott's Limo's expansion plans. Whatever that role was, the exotic car entertainment complex did not open in 1989 or 1990, and the corporation had not commenced business activities in support thereof during 1989 and 1990. The corporation's expenditures during 1989 and 1990 were nondeductible preopening expenses. Accordingly, we sustain respondent's disallowance of the losses passed through from the corporation to petitioner.

IV. Additions to Tax

A. Section 6661

Respondent has determined additions to tax under section 6661 for 1987 and 1988. Section 6661(a) provides for an addition to the tax for any year for which there is a substantial understatement of income tax. A substantial understatement is defined as an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return for the year or $5,000. Sec. 6661(b)(1)(A). The amount of the addition to tax is 25 percent of the underpayment attributable to a substantial understatement. Pallottini v. Commissioner, 90 T.C. 498 (1988). The amount of the understatement, however, is reduced by amounts attributable to items for which (1) there existed substantial authority for the taxpayer's position, or (2) where the taxpayer disclosed relevant facts concerning the items with his tax return. Sec. 6661(b)(2)(B). Respondent may waive all or part of the section 6661 addition to tax on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith. Respondent has determined that all of petitioners' underpayments of income tax liability for 1987 and 1988 are attributable to substantial understatements of income tax liability.

Due to (1) our decision with regard to the depreciation issue and (2) concessions made by the parties, we are unable to determine whether there are substantial understatements of income for 1987 and 1988. We can, however, address the single remaining

issue raised by petitioners with regard to imposition of the section 6661 additions for both 1987 and 1988. Any applicable section 6661 addition to tax can be computed pursuant to Rule 155.

Petitioners argue that respondent should have exercised her authority to waive the section 6661 additions to tax for 1987 and 1988 because "petitioners showed reasonable good-faith reliance on their tax advisers and the positions at issue were, at the very least, reasonable interpretations of the then-existing case law and statutory regulatory authority on these issues." Apparently, petitioners restrict that argument to the depreciation deductions, which issue we have resolved favorably to petitioners, and not to any items that may have been conceded by petitioners. In any event, we do not believe that respondent abused her discretion not to waive the addition to tax.

While the authority to waive the section 6661 addition to tax rests with respondent, not with this Court, the denial of a waiver by respondent is reviewable by the Court under a standard of abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988). Nevertheless, petitioners have not proven that petitioners sought such a waiver prior to trial or that petitioners provided to respondent any evidence regarding reasonable cause or good faith to support a waiver. Petitioners have not proven that respondent had any information prior to trial that would have led her to consider waiving the section

6661 additions.  Accordingly, as we noted in <u>Brown v.</u>
<u>Commissioner</u>, T.C. Memo. 1992-15, "we cannot find that respondent
abused * * *[her] discretion when petitioner never requested
respondent to exercise it."  See also <u>McCoy Enterprises, Inc. v.</u>
<u>Commissioner</u>, T.C. Memo. 1992-693 (same), affd. 58 F.3d 557 (10th
Cir. 1995) (affg. on precisely that point).

On the premises stated, the section 6661 additions to tax
determined by respondent are sustained.

B.  <u>Section 6662</u>

Respondent has determined accuracy related penalties under
section 6662 for 1989 and 1990.  Section 6662(a) provides for an
accuracy related penalty in the amount of 20 percent of the
portion of any underpayment of tax liability attributable to,
among other things, any substantial understatement of income tax.
Sec. 6662(b)(2).  A substantial understatement is defined as an
understatement which exceeds the greater of 10 percent of the tax
required to be shown on the return for the year or $5,000.  Sec.
6662(d)(1)(A).  The amount of the understatement, however, is
reduced by amounts attributable to items for which (1) there
existed substantial authority for the taxpayer's position, or
(2) where the taxpayer disclosed relevant facts concerning the
items with his tax return.  Sec. 6662(d)(2)(B).  No penalty is
imposed with respect to any portion of an underpayment if the
taxpayer can show that there was a reasonable cause for such
portion and that the taxpayer acted in good faith with respect to

such portion.  Sec. 6664(c)(1).  Respondent has determined that all of petitioners' underpayments of income tax liability for 1989 and 1990 are attributable to substantial understatements of income tax liability.

As is true for 1987 and 1988, due to (1) our decision with regard to the depreciation issue and (2) concessions made by the parties, we are unable to determine whether there are substantial understatements of income for 1989 and 1990.  We can, however, address the two remaining issues raised by petitioners with regard to imposition of the section 6662 penalties for both 1989 and 1990.  Any applicable section 6662 penalties can be computed pursuant to Rule 155.

Petitioners argue that there was substantial authority for treating the corporation's expenditures in 1989 and 1990 as those of an established trade or business.  Petitioners rely on the following proposition:

> The evidence established that * * * [the corporation] had, by 1988, gone far beyond any preparatory efforts and had, in fact, begun actively selling various exotic car-related merchandize [sic] at car shows featuring Scot's [sic] Limo's exotic cars."

Petitioners cite <u>Briarcliff Candy Corp. v. Commissioner</u>, 475 F.2d 775 (2d Cir. 1973) and <u>NCNB Corp. v. United States</u>, 684 F.2d 285 (4th Cir. 1982), for the proposition that "expenses incurred during * * * a business transition or expansion by an existing business are fully deductible".

Such authorities are not on point.  We have found that the corporation did <u>not</u> engage in <u>any</u> trade or business in 1988 (or in 1989 or 1990).  In part, we did so in reliance on petitioners' agreement that the corporation's receipts and verifiable expenses for 1988 properly were allocable to the trade or business of Scott's Limo.  Petitioners have adduced no authority, substantial or otherwise, to support deductions on the facts as we have found them and as, apparently, petitioners have agreed to them.

Finally, in the petition, petitioners aver as a fact, in support of their assignment that respondent erred in determining penalties under section 6662, that "petitioners acted in good faith in reliance on professional advice in filing their returns as they did and had a reasonable basis for and belief in the accuracy of said returns."  Respondent denies that averment.  We assume that petitioners meant to invoke the reasonable cause exception of section 6664(c)(1).  However, petitioners do not mention section 6664(c)(1) in their opening brief and, in their reply brief, state only:  "the facts demonstrate that petitioners come within the provisions of I.R.C. § 6664 and are entitled to relief thereunder."  Apparently, the facts that petitioners rely on are that "petitioners and their accountant clearly made a good faith effort to determine their true tax liabilities for the years at issue."  Petitioners have not particularized the portions of the 1989 and 1990 underpayments with respect to which they claim to have acted with reasonable cause and in good faith.

Except perhaps with respect to the depreciation deductions (an issue that we have resolved in petitioners' favor), petitioners have proposed no findings of fact that would allow us to conclude that petitioners acted with reasonable cause and in good faith. The closest petitioners come is a proposed finding (which we have declined to make):  "Bruce has no accounting or tax background and depended entirely on Giunta [a certified public accountant] for tax reporting positions taken * * * [on petitioners' 1988 and 1989 returns]".  Petitioners have failed to carry their burden of showing that they acted with reasonable cause and in good faith with respect to any portion of the underpayments in tax determined by respondent for 1989 or 1990 except those portions of such underpayments attributable to depreciation of the exotic automobiles.  See sec. 1.6664-4, Income Tax Regs.

Subject to the Rule 155 computation, section 6662(a) applies to the whole of the underpayments determined by respondent for 1989 and 1990 except those portions attributable to depreciation of the exotic automobiles.  To that extent, respondent's determinations of penalties under section 6662(a) is sustained.

<u>Decision will be entered</u>

<u>under Rule 155</u>.